UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v.  Case Nos.:  5:14cr20/RH/CJK
  5:16cv16/RH/CJK

TAVARES LEMOND GAINER
_____/

REPORT AND RECOMMENDATION

Defendant Tavares Lemond Gainer has moved for relief from his federal sentence by filing a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence." (ECF No. 48.) The Government filed a response (ECF No. 50) and Defendant filed a reply. (ECF No. 51.) The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. See N.D. Fla. Loc. R. 72.2; see also 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). The court recommends that the § 2255 motion be denied without an evidentiary hearing. See Rules Governing Section 2255 Cases 8(a) and (b).

PROCEDURAL BACKGROUND

On November 12, 2014, Mr. Gainer pleaded guilty to a single count indictment charging him with possession of a firearm by a convicted felon. (ECF Nos. 1, 12, 13, 14.) Michelle Daffin, Esq., of the Office of the Federal Public Defender represented him.

The Final Presentence Investigation Report ("PSR") reflects a base offense level of 20, and a four-level adjustment due to Mr. Gainer's use of the charged firearm in connection with another felony offense, for a total offense level of 24. (ECF No. 23, PSR ¶¶ 19-28.) Mr. Gainer did not receive an acceptance of responsibility adjustment due to his involvement with continued criminal conduct, to wit, he was charged with two inmate-on-inmate assaults at the jail. (PSR ¶¶ 26, 36a, 36b.) His criminal history category was II. (PSR ¶¶ 32-34.) With a total offense level of 24 and a criminal history category of II, Mr. Gainer's guideline imprisonment range was 57 to 71 months, well below the statutory maximum term of ten years' imprisonment. (PSR ¶¶ 69, 70.) The court sentenced him at the mid-point of this range to a term of 64 months imprisonment. (ECF Nos. 27, 28, 38.)

Mr. Gainer appealed, and on September 4, 2015, the Eleventh Circuit affirmed his conviction and sentence after its independent review of the record revealed no

arguable issues of merit. (ECF No. 43.) In the present motion, Mr. Gainer claims counsel was constitutionally ineffective because counsel did not consult with him about the advantages and disadvantages of pleading guilty instead of proceeding to trial, and because counsel did not interview and call available witnesses to testify in his behalf. The Government opposes the motion.

## ANALYSIS

<u>General Standard of Review</u>

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a

complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  *Nyhuis*, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.

*Lynn*, 365 F.3d at 1234-35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (*quoting Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003). To prevail on a constitutional claim of ineffective assistance of counsel, a

defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). *Strickland*'s two-part test also applies to guilty pleas. *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (*citing Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. *Id.* at 163 (*quoting Hill*, 474 U.S. at 59). A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice. *Pericles v. United States*, 567 F. App'x 776, 782 (11th Cir. 2014) (*quoting Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)); *Rosin v. United States*, 786 F.3d 873 (11th Cir. 2015). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (*quoting Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct). To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314.

To establish prejudice, defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be

Case Nos.: 5:14cr20/RH/CJK; 5:16cv16/RH/CJK

substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (*quoting Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because

the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (*quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."  *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).  Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.  *Gordon*, 518 F.3d at 1301 (*citing Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).  To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.  *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  *See Winthrop*–*Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).  Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  *Lynn*, 365 F.3d at 1239.  Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

Ground One

Mr. Gainer first claims that counsel failed to adequately and correctly advise him about the sentencing advantages and disadvantages of pleading guilty versus going to trial. Specifically he contends that attorney Daffin advised him if he proceeded to trial and was convicted, the Government would seek "upward departures," whereas if he entered a guilty plea, it would not do so. (ECF No. 48 at 16.) At sentencing, however, the Government moved for upward departures due to "specific offense characteristic, and criminal history is underrepresented." (*Id*.) Mr. Gainer claims this resulted in prejudice to him because he "always wanted to go to trial." (*Id.* at 17.)

The written plea agreement and the transcript of the plea proceeding defeat Mr. Gainer's claim. The plea agreement, which Mr. Gainer assured the court, under oath, that he had carefully read, provides that the United States Attorney reserved the right to make arguments… including sentencing recommendations, and whether departure upward or downward is appropriate. (ECF No. 37 at 11; ECF No. 12 at 3-4.) During the plea proceeding Mr. Gainer also acknowledged both judicial discretion in sentencing and his understanding that if his sentence turned out to be different than what his lawyer predicted, he would not be able to take back his

guilty plea.   (ECF No. 37 at 10.)    Mr. Gainer also averred that the plea agreement represented his entire agreement with the Government and that there were no secret or undisclosed promises.    (*Id.* at 11.)

As noted above, Mr. Gainer's advisory guidelines range was 57 to 71 months. Despite the Government's argument in favor of an above-guidelines departure, the court sentenced him squarely at the mid-point of that range.   Thus, the Government's argument appears to have had no impact on his sentence; he has shown perhaps a faulty memory, but not prejudice.

Next, Mr. Gainer asserts that counsel was ineffective because she misadvised him that if he pleaded guilty he would be "guaranteed" a three-level reduction for entering a timely plea and acceptance of responsibility.   This assertion is contradicted by the fact that the "guarantee" was not contained within the plea documents which Mr. Gainer averred represented his entire agreement with the Government.    (ECF No. 37 at 11.)

Furthermore, Mr. Gainer would have received the three-level reduction, but for his involvement in two fights at his custodial facility.    The Draft PSR (ECF No. 17) reflects the three-level adjustment, but the Final PSR eliminated the acceptance credit after Mr. Gainer was charged with two separate "inmate on inmate" assaults,

which both took place on December 14, 2014.   (ECF No. 23, PSR ¶¶ 26, 36a, 36b.) Mr. Gainer brazenly faults counsel for failing to advise that any future criminal conduct would result in a withdrawal of the acceptance of responsibility adjustment, and he asserts that had his attorney informed him of this he "would not have engaged in the criminal conduct," for which he was separately charged.   (ECF No. 48 at 18.) At sentencing, Mr. Gainer testified that the assaults stemmed from another inmate's sexual assault and theft of his property.   (ECF No. 38 at 31-50.)   His claim herein is that the possibility of losing the three-level adjustment for acceptance of responsibility would have deterred him from reacting to the alleged sexual assault and theft.   Such assertion does not deserve credit.   Although the alleged criminal conduct was unrelated to the criminal conduct charged in this case, it is "reasonable to believe that any attorney in the same position as [Mr. Gainer's] defense counsel would not have thought it necessary to advise [Mr. Gainer] of the potential obvious consequences to his conduct."   (ECF No. 50 at 22).

     Finally, Mr. Gainer cannot show prejudice resulting from the loss of the three-point adjustment.   At sentencing, the defense objected to Mr. Gainer being penalized for the unrelated criminal conduct.   After hearing testimony from both an investigator at the Bay County Jail and Mr. Gainer, as well as vigorous argument

from counsel, the court overruled the objection. (ECF No. 38 at 86.) In response to an inquiry from the Government, the court stated that it was "fair" to say that it would have imposed the same sentence even if Mr. Gainer had received the three-point adjustment for acceptance of responsibility. (ECF No. 38 at 91-92.) Therefore, having shown neither deficient performance nor prejudice, he is not entitled to relief.

### Ground Two

In his second ground Mr. Gainer claims that counsel was constitutionally ineffective because she failed to interview and call available witnesses to testify in his behalf.

As noted above, Mr. Gainer received a four-level enhancement because the firearm and/or ammunition that he possessed was used in connection with a felony offense in Chatham County, Georgia. (ECF No. 23, PSR ¶ 20.) Mr. Gainer allegedly shot at Tynika Coolly, on or about February 5, 2014, using the same firearm found in his possession when he was arrested in Bay County Florida two weeks later. The defense objected to this adjustment. (ECF No. 38 at 3.) Mr. Gainer states that before sentencing he told his attorney about three witnesses who were willing to testify in his behalf about the evidence relevant to the "specific

offense characteristic." The three witnesses were Ms. Coolly, Useekie Brightwell, and Natasha Deloach. Mr. Gainer now claims that Ms. Coolly would have testified that he did not fire a gun at her, and that neither she nor Ms. Brightwell saw him with a gun. (ECF No. 48 at 19.) Ms. Deloach allegedly would have provided him an alibi by testifying that the two of them were together in Brunswick, Georgia the entire day of February 5, 2014, and did not return to Savannah until the day after the alleged shooting. (*Id.*) Mr. Gainer offers only his proffer and did not provide any witness affidavits or evidence in support of his assertions.

The content of Mr. Gainer's proffer contradicts the testimony of two detectives, Robert Santoro and Alan Brooks Sammons, from the Savannah-Chatham Metropolitan Police Department whom the Government called to testify about their investigation of the incident. (ECF No. 38 at 50-85.) Detective Santoro testified that during his investigation, Ms. Coolly provided a description seemingly matching that of Mr. Gainer, and that she also identified Gainer from a sequential photo array of 12 pictures. (ECF No. 38 at 57.) Ms. Coolly later contacted Detective Santoro about "canceling the warrant," although she never recanted her statement. (ECF No. 38 at 61-62.)

Ms. Brightwell, who is Ms. Deloach's daughter, told Detective Sammons that she had seen the individual later identified as Mr. Gainer with a gun in his hand and that he "fired rounds off into the air and did not point a weapon at Ms. Coolly." (ECF No. 38 at 65, 76.) Detective Sammons also testified that he spoke to Ms. Deloach on February 5, 2014, about the shooting. (ECF No. 38 at 72-74). Ms. Deloach provided a markedly different description of the alleged assailant at the time, although Ms. Brightwell had already told the detective that she knew the individual as her mother's boyfriend. (ECF No. 38 at 76).

During cross-examination, defense counsel attempted to discredit the identification of Mr. Gainer as the person who had allegedly fired the weapon at Ms. Cooley based on discrepancies in the physical description of the alleged perpetrator and Mr. Gainer. Counsel also argued that the Government's failure to call the three witnesses Mr. Gainer now suggests she should have called rendered its case suspect. (ECF No. 38 at 84.) Mr. Gainer has not established that the three witnesses would have been able or willing to testify as he now suggests—at least without committing perjury. Nor has he shown that the court would have found the witnesses' testimony more credible than that of the two detectives. In sum, Mr. Gainer has

not established that counsel's failure to call these witnesses was constitutionally deficient, and he is not entitled to relief.

### Conclusion

Mr. Gainer has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has he shown that an evidentiary hearing is warranted. Therefore the § 2255 motion should be denied in its entirety.

### Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that [t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

Case Nos.: 5:14cr20/RH/CJK; 5:16cv16/RH/CJK

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (ECF No. 48) be DENIED.

2.  A certificate of appealability be DENIED.

At Pensacola, Florida, this 16th day of August, 2018.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

Case Nos.: 5:14cr20/RH/CJK; 5:16cv16/RH/CJK

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.